IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MALIK AKBARBHAI VIRANI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ANDREW HURON, AS OFFICER IN | § | |
| CHARGE OF THE SOUTH TEXAS | § | |
| DETENTION COMPLEX; | § | |
| IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, AS AN AGENCY OF | § | SA-19-CV-00499-ESC |
| THE GOVERNMENT OF THE UNITED | § | |
| STATES OF AMERICA; DANIEL A. | § | |
| BIBLE, AS SAN ANTONIO FIELD | § | |
| OFFICE DIRECTOR FOR DETENTION | § | |
| AND REMOVAL FOR IMMIGRATION | § | |
| AND CUSTOMS ENFORCEMENT;  THE | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, AS AN AGENCY OF THE | § | |
| GOVERNMENT OF THE UNITED | § | |
| STATES OF AMERICA; KEVIN | § | |
| MCALEENAN, AS ACTING | § | |
| SECRETARY OF THE DEPARTMENT | § | |
| OF HOMELAND SECURITY; AND | § | |
| RAYNALDO CASTRO, AS FACILITY | § | |
| ADMINISTRATOR/WARDEN OF THE | § | |
| SOUTH TEXAS DETENTION | § | |
| COMPLEX; | § | |
| | § | |
| *Defendants.* | § | |

**<u>ORDER</u>**

Before the Court in the above-styled cause of action is Respondents' Motion to Dismiss

and/or, in the Alternative, for Summary Judgment [#14].  This case was reassigned to the

undersigned's docket upon the consent of all parties to United States Magistrate Jurisdiction

[#25]. The undersigned therefore has authority to issue this order pursuant to 28 U.S.C. §

636(b)(1)(A).

In issuing this Order, the Court has considered Petitioner Malik Virani's Response to the Government's Motion [#15], the Government's Reply [#18], Petitioner's Surreply [#19], the Government's Supplemental Brief in Support of Its Motion for Summary Judgment [#36], Petitioner's Brief in Response [#37], the various Advisories filed by Petitioner [#13, 17, #31, #39], Petitioner's Verified Amended Petition and Complaint for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#29], the arguments of the parties at the Court's November 1, 2019 hearing, the entire record in this matter, and the governing law. For the reasons that follow, the Court will **DENY IN PART AND GRANT IN PART** the Respondents' motion.

## I. Jurisdiction

This Court has jurisdiction over the Petition before the Court because Petitioner challenges the constitutionality of his continued detention and not the final order of removal underlying his detention. The Real ID Act divests federal courts of jurisdiction to consider challenges to removal orders, and federal courts lack jurisdiction to review discretionary decisions of the Attorney General. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(5)). Federal courts have jurisdiction, however, to adjudicate claims challenging the constitutionality of an alien's continued detention. *See Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 776 (W.D. Tex. 2006) (citing *Gul v. Rozos*, 163 Fed. App'x 317, 2006 WL 140540, at *1 (5th Cir. 2006)).

## II. Procedural Background

Petitioner Malik Akbarbhai Virani, a citizen and national of India, filed his Verified Petition and Complaint for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on May 10, 2019, asking this Court to order his immediate release from detention while Petitioner awaits his removal to India. Petitioner alleges that he poses no threat to the community and no risk of flight

and therefore should not be held beyond the 90-day "removal period" under the federal statutes governing his detention. Petitioner further claims that he was denied the administrative review he is guaranteed by statute to ensure that his continued detention is warranted and, therefore, his continued detention violates his right to procedural and substantive due process. Petitioner also argues there is no significant likelihood of his removal to India in the reasonably foreseeable future and his continued detention violates the federal statute governing post-removal-period detention as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

The record in this case reflects that Petitioner and his wife entered the United States in 1992 as non-immigrant visitors. (Chen Decl. [#14-4] at ¶ 1.) The Immigration and Naturalization Service ("INS") encountered Petitioner in 1998 and served him with a Notice to Appear under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") for overstaying his visa. (*Id.* at ¶ 2.) Petitioner paid a bond, was released from custody, and filed an application for asylum and withholding of removal in an attempt to remain in the United States. (Asylum Application [#1-1] at 2–10.) In late 1999, an immigration judge denied the application as untimely filed and therefore did not review its merits but granted Petitioner Voluntary Departure to India. (Voluntary Departure Order [#1-1] at 53–65.) Petitioner did not depart the United States at that time and instead appealed the ruling. (Chen Decl. [#14-4] at ¶ 7.)

The BIA affirmed the grant of Voluntary Departure in January 2003. (*Id.* at ¶ 9.) Petitioner filed various motions to reopen his immigration proceedings and to apply for readjustment of status over the course of the following years, none of which was successful. (*Id.* at ¶¶ 10–19, 21–22; BIA Orders [#1-1] at 66–73.) Petitioner also filed a Form I-485, an Application to Register Permanent Residence or Adjust Status, in August 2007, which as of the filing of this case remained pending. (Chen Decl. [#14-4] at ¶ 20.) INS provided Petitioner with

multiple extensions of his voluntary departure period, but ultimately these extensions expired. (*See* BIA Decision [#1-1] at 66).

In August 2018, fifteen years after the BIA affirmed the grant of Voluntary Departure, Petitioner was arrested for violating INS's order to depart and was placed in detention pending his deportation to India. (*Id.* at ¶ 24.) Petitioner thereafter moved the BIA to reopen his removal proceedings and again filed an application for asylum, this time based on changed country circumstances. (Motion to Reopen [#1] at 58–79.) On May 10, 2019, while Petitioner's applications were pending, he filed his original Verified Petition and Complaint for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, challenging his continued detention. (Pet. [#1].) The BIA denied Petitioner's motion to reopen his removal proceedings in June 2019, and Petitioner timely appealed the BIA's decision to the Fifth Circuit Court of Appeals. (BIA Denial [#13-1]; Appeal [#13-2].) Petitioner also timely filed with the BIA a motion to reconsider its June 2019 decision. (Motion to Reconsider [#13-3].)

Respondents[1] filed the Motion to Dismiss and/or Motion for Summary Judgment that is the subject of this Order on July 3, 2019 [#14]. By their motion, Respondents ask the Court to dismiss Petitioner's Petition for Writ of Habeas Corpus for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure or award them summary judgment under Rule 56. After the motion was filed, the Fifth Circuit granted Petitioner's motion to stay his deportation pending conclusion of the appeal. (Advisory [#17].) The BIA denied Petitioner's motion to reconsider in September 2019. Petitioner appealed this BIA decision to the Fifth

---

[1] Respondents to the Original Petition were Andrew Huron, in his Official Capacity as the Immigration and Customes Enforcement ("ICE") Officer in Charge of the South Texas Detention Complex; ICE; Daniel A. Bible, in his Official Capacity as the San Antonio Field Office Director for ICE; the Department of Homeland Security ("DHS"); and Kevin McAleenan, Acting Secretary of the DHS.

Circuit as well, and the Fifth Circuit consolidated the two appeals. *See Bhai v. Barr*, Cause No. 19-60451.

In early October 2019, this case was transferred to the undersigned's docket [#25]. Petitioner thereafter moved to amend his Petition to add Raynaldo Castro, Facility Administrator of the South Texas Detention Complex where Petitioner is currently detained, as an additional Respondent. Respondents did not oppose the requested amendment. The Court granted the motion, and Petitioner filed his Verified Amended Petition and Complaint for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#29] on October 22, 2019. Because the Amended Petition did not change the substance of Petitioner's factual allegations or the asserted legal bases for his release from detention, the Court did not dismiss as moot Respondents' motion or instruct Respondents to file a new motion.[2]

After the Amended Petition was filed, the Court held a hearing on Respondents' Motion to Dismiss and/or for Summary Judgment and took the motion under advisement. At the hearing, the Court informed the parties that it intended to treat the motion as a Motion for Summary Judgment, rather than a Motion to Dismiss, and ordered supplemental briefing and evidence, specifically as to what process Petitioner was given with respect to his continued detention. Both Petitioner and Respondents filed a post-hearing brief with additional summary judgment evidence. (Respondents' Suppl. Brief [#36]; Pet.'s Suppl. Brief [#37].)

_____

[2] Although a motion to dismiss may be rendered moot by a supplemental or amended pleading, the parties agreed that is not the appropriate course here. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2002) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.").

Petitioner recently advised the Court that his son Shareef Nadeem Virani was naturalized as a citizen of the United States on February 19, 2020. (Advisory [#39].) As a result of his new citizenship status, Petitioner's son has begun the process of filing immediate relative petitions on behalf of his parents, including Petitioner, so that they may seek adjustment of their immigration status to permanent resident status. Petitioner's appeal before the Fifth Circuit remains pending and the stay of deportation remains in force. At the time of the writing of this Order, Petitioner has been held in custody for over 18 months.

### III. Summary Judgment Standard in Habeas Context

To prevail, a Section 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). This standard applies with equal force to habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating

that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV. Analysis

Respondents contend that they are entitled to summary judgment because Petitioner cannot prevail as a matter of law on any of the claims asserted in his habeas petition. Again, Petitioner raises two primary bases for relief in his habeas petition. First, Petitioner challenges his prolonged post-removal-period detention under the standards set forth in *Zadvydas*, arguing that there is no likelihood of his removal in the reasonably foreseeable future and therefore his continued detention violates his right to substantive due process. Second, he argues he is not a flight risk or danger to the community, does not satisfy any of the other statutory bases for detention beyond the 90-day removal period, and was not given the custody review procedures set forth in the regulations and therefore his continued detention violates his right to procedural due process. Although Respondents have established as a matter of law that Petitioner cannot

prevail on his claim under *Zadvydas*, Respondents have not satisfied their summary judgment burden with respect to Petitioner's procedural due process challenge.

The summary judgment record establishes as a matter of law that Petitioner's continued detention neither runs afoul of *Zadvydas*'s mandate nor violates his right to substantive due process. However, as to Petitioner's other ground for habeas relief, Respondents have not submitted conclusive summary judgment evidence that they provided Petitioner with the procedural safeguards he is due under the statutes and regulations governing post-removal-period detention and therefore did not violate Petitioner's statutory or constitutional rights such that habeas relief is unavailable as a matter of law. Nor have Respondents established as a matter of law that they have already cured any defects in the custodial review process. Because Respondents failed to satisfy their evidentiary burden, they are not entitled to summary judgment. Accordingly, the Court will grant in part and deny in part Respondents' motion, provide Respondents with an opportunity to provide Petitioner with substitute process, and set this case for an evidentiary hearing to resolve conflicts in the evidentiary record over what process Petitioner has received (including any interim substitute process) and to evaluate whether any violation of Petitioner's statutory or due process rights occurred and warrants habeas relief.

## A. Statutory and Regulatory Framework Governing Post-Removal-Period Detention of Aliens

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also* 8 U.S.C. § 1231(a)(1)(A) (establishing 90-day removal period). Further detention is authorized in some circumstances by statute if the Government fails to remove the alien during this initial statutory period. *Zadvydas*,

533 U.S. at 682 (citing 8 U.S.C. § 1231(a)(6)).  This statute provides that the following categories of aliens who have been ordered removed may be further detained beyond the removal period:  (1) inadmissible aliens, i.e., aliens ineligible for visas or admission based on specified public health and criminal grounds; (2) aliens removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4); or (3) aliens who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.  8 U.S.C. § 1231(a)(6).  Although the statute gives the Attorney General the discretion to continue to detain an alien in these situations, this continued detention is subject to the limits of the Fifth Amendment's Due Process Clause.  *See Zadvydas*, 533 U.S. at 690–92.

Related INS regulations govern the custody review process beyond the initial 90-day removal period.  *Id.* at 683 (citing 8 C.F.R. §§ 241.4)).  These regulations dictate that the INS District Director or Director of the Detention and Removal Field Office will conduct an initial review "prior to the expiration of the removal period," which consists of "a review of the alien's records and any written information submitted . . . by or on behalf of the alien" and an optional personal or telephonic interview. 8 C.F.R. § 241.4(h)(1); *see also* § 241.4(k)(1)(i). The decisionmaker is directed to "provide written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release."  *Id.* at § 241.4(h)(2).  The decisionmaker is also required to "notify the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status."  *Id.* at § 241.4(h)(4); *see also id.* at § 241.4(k)(1)(i).  This is commonly referred to as the 90-day Post Order Custody Review or "90-day POCR."

When release is denied, there is a second custody review at the end of the three-month period following the expiration of the removal period (at 180-days from initial detention) to determine further detention or release under supervision. *Id.* at § 241.4(k)(1)(ii). This review is conducted by Headquarters Post-Order Detention Unit ("HQPDU" or "HQ") and is also based on a records review and an optional personal interview. *Id.* at §§ 241.4(c)(2), (i)(1). This review is commonly referred to as the 180-day POCR.

In making all custody decisions, the decisionmaker considers factors such as "the alien's disciplinary record, criminal record, mental health reports, evidence of rehabilitation, history of flight, prior immigration history, and favorable factors such as family ties." *Zadvydas*, 533 U.S. at 683 (citing 8 C.F.R. § 241.4(f)). The District Director and HQPDU are directed to also consider the ability to obtain travel documents for the alien. 8 C.F.R. § 241.4(g)(3). Before making any recommendation or decision to release a detainee, there must be a finding that the detainee is not likely to pose a threat to the community and does not pose a significant flight risk, among other requirements. *Id.* at § 241.4(e). If the panel decides against release, it must review the matter again within a year, but can review it earlier if conditions change. *Id.* at §§ 241.4(k)(2)(iii), (v). All reviews described in the regulations must be conducted within the specified time periods "or as soon as possible thereafter, allowing for any unforeseen circumstances or emergent situation." *Id.* at § 241.4(k)(2)(iv).

Additional regulations were promulgated in the wake of the Supreme Court's decision in *Zadvydas*. In *Zadvydas*, the Supreme Court limited detention beyond the initial 90-day removal period to a period "reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 689. The Court held that detention for six months is "presumptively reasonable," but beyond six months, if removal is no longer reasonably foreseeable, continued

detention is not warranted. *Id.* at 701. Under *Zadvydas* and the regulations implementing it, if an alien provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; 8 C.F.R. § 241.13(a). An alien may specifically request review of the likelihood of removal at any time after a removal order becomes final. 8 C.F.R. § 241.13(d)(3). If an alien is not likely to be removed in the reasonably foreseeable future, the alien must be released unless continued detention is justified by one of the "special circumstances" set forth in 8 C.F.R. § 241.14. *Id.* at § 241.13(e)(6).

**B.     Petitioner cannot prevail on his challenge to his detention under *Zadvydas*.**

Respondents are entitled to summary judgment on Petitioner's *Zadvydas* claim. Petitioner contends his removal is not imminent or reasonably foreseeable and therefore his continued detention violates 8 U.S.C. § 1231(a) as interpreted by the Supreme Court in *Zadvydas* and violates his right to substantive due process. The issue addressed in *Zadvydas* was "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." 533 U.S. at 695. In the case of the aliens at issue in the two consolidated cases underlying the *Zadvydas* decision, the United States was unable to secure travel documents to deport the aliens because it could not find countries willing to accept them due to citizenship and treaty issues. *Id.* at 685–86. The Supreme Court was therefore faced with the issue of "potentially permanent" detention. *Id.* at 691.

The *Zadvydas* decision evaluated whether such potentially permanent detention violated an alien's right to due process. The Due Process Clause applies to all "persons" within the United States, including aliens, regardless of whether their presence is lawful, temporary, or permanent. *Id.* at 693. The substantive component of the Due Process Clause prevents the

Government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937)). The Supreme Court recognized that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Supreme Court held that the Constitution does not permit indefinite detention and that continued detention is no longer authorized by the post-removal-period statute where removal is not reasonably foreseeable. 533 U.S. at 699–700. Again, although the Court recognized a six-month presumption of reasonableness with respect to detention, the Court stated that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

*Zadvydas* therefore stands for the principle that the Government may not continue to detain an alien where "there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. The burden of demonstrating there is no significant likelihood of removal rests with the alien. *Id.* Here, Petitioner contends that there is no significant likelihood of removal because he has already been detained for well over the six-month presumptive period and the Fifth Circuit has stayed his removal pending the resolution of his consolidated appeal. Despite Petitioner's prolonged detention, he cannot satisfy his burden to demonstrate "good reason to believe" that his removal is unforeseeable on the record before the Court, and therefore Respondents are entitled to summary judgment on this claim.

The summary judgment record demonstrates that ICE obtained travel documents to remove Petitioner to India on June 13, 2019. (Challes Decl. [#36-2] at ¶ 19.) Thereafter, Petitioner filed an emergency stay of removal with the Fifth Circuit during the pendency of his consolidated appeal, which was granted on July 31, 2019. (Advisory [#17].) Briefing at the Fifth Circuit has been completed, and the parties are awaiting action from the Fifth Circuit. (*Id.*) Although the travel documents issued in June 2019 expired in December 2019, but for the pendency of his appeal and the Fifth Circuit stay, Petitioner would have already been removed to India. There is no existing impediment to the Government obtaining additional travel documents and proceeding with removal other than Petitioner's litigation activity.

Courts in this Circuit have repeatedly held that detention is neither indefinite nor potentially permanent where the delay in removal is directly attributable to the litigation activity of the alien. *See Thompson v. Holder*, 374 Fed. App'x 522, 523 (5th Cir. 2010) (per curium) ("Thompson's detention is neither indefinite nor potentially permanent as there is a certain end point to the proceedings related to his pending petition of review and as it appears reasonably likely that he will be removed in the foreseeable future if his petition is denied."); *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) ("In the instant case, Andrade has offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to Cape Verde following the resolution of his appeals. His constitutional claim is meritless."); *Maramba v. Mukasey*, No. 3:08-cv-0351-K, 2008 WL 1971378, at *3 (N.D. Tex. Apr. 28, 2008) ("Petitioner will be subject to removal from the United States, or will be granted asylum. There is no indication that his custody will last longer than the duration of his removal proceedings."); *Amadi v. Young*, No. 2:06-CV-1138, 2007 WL 855358, at *4 (W.D. La. Feb. 12, 2007) ("[T]he court finds that because petitioner's continuing litigation is the cause of his continued detention,

he cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future. Once petitioner's legal proceedings are concluded, it is likely that he will be removed to Nigeria."). To extend *Zadvydas*'s holding to those situations within the alien's control, as opposed to delays related to external factors such as the political climate of the recipient country or other issues with repatriation, would create a perverse incentive for litigants to file collateral attacks on their detention and would reward challenges to removal with release from detention. *See Hernandez-Esquivel v. Castro*, No. 5-17-CV-0564-RBF, 2018 WL 3097029, at *5 (W.D. Tex. June 22, 2018) ("To conclude otherwise would invite potentially frivolous collateral challenges to unreviewable removal orders.").

Nor is this Court willing to tether the foreseeabilty-of-removal analysis to speculation as to whether Petitioner's appeal will ultimately be meritorious. To do so would ask a reviewing habeas court to act beyond its jurisdiction. Nonetheless, the Court notes that Petitioner's appeal before the Fifth Circuit asks the appellate court to review the BIA's denial of a fifth motion to reopen Petitioner's removal proceedings. The Fifth Circuit reviews the denial of a motion to reopen under a "highly deferential abuse-of-discretion standard." *Mejia v. Whitaker*, 913 F.3d 482, 488 (5th Cir. 2019). The circuit court must affirm the BIA's decision if "it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.* (quoting *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009)). Moreover, a petitioner bears a "heavy burden" to show changed country conditions for purposes of reopening removal proceedings. *Nunez v. Sessions*, 882 F.3d 499, 508 (5th Cir. 2018). In tension with this high standard is the reality (pointed out by Petitioner) that the Fifth Circuit does not always issue stays of removal during the pendency of an appeal, but it chose to do so here. One of the factors the Fifth Circuit considers in granting a

stay is whether the alien has shown "a likelihood of success on the merits." *Ignacio v. I.N.S.*, 955 F.2d 295, 299 (5th Cir. 1992) (en banc). This Court can only speculate as to the motivations underlying the Fifth Circuit's decision to issue a stay of removal proceedings and will not inject conjecture into the *Zadvydas* analysis. The ultimate merit of Petitioner's appeal is before the Fifth Circuit, not this Court. The important fact here is that if the appeal is resolved in the Government's favor, Petitioner will be removed to India in the foreseeable future.

The Court is troubled that Petitioner's detention has at this point exceeded 18 months, far beyond the presumptive six-month period of reasonableness recognized by the Supreme Court. This Court also acknowledges the principle noted in *Zadvydas* that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. Ultimately, however, the record does not support Petitioner's claim that his detention threatens to be either indefinite or potentially permanent so as to implicate *Zadvydas* and substantive due process concerns.[3] Petitioner has failed to carry his burden to show "there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Petitioner's litigation activity is the direct cause of his prolonged detention; but for it, he would not be detained but living in India. A decision from the Fifth Circuit is forthcoming, and if the decision is unfavorable to Petitioner, there is no identified impediment to his removal.

**C.  Respondents have not established as a matter of law that they did not violate Petitioner's procedural due process rights by complying with the statutory and regulatory requirements governing detention beyond the removal period.**

Petitioner contends that his continued detention is not authorized by statute or the Constitution because he did not receive the incremental reviews mandated by the governing INS

---

[3] Nor does Petitioner identify any other conduct by the Government that is so egregious as to shock the conscious so as to deprive him of his right to substantive due process.

regulations, most importantly a 90-day POCR justifying his continued detention due to a finding that he presents a risk of flight or a danger to the community. Respondents contend they are entitled to summary judgment on this claim because ICE conducted all of the reviews to which Petitioner is entitled and there is "no basis for concluding that Petitioner has not received the procedural protections" set forth in the regulations. (Mtn. [#14] at 15.) Notably, Respondents do not argue that regardless of whether they complied with the governing regulations, Petitioner is not entitled to habeas relief. Their summary judgment motion is rooted in an argument that they complied with the regulations. Having reviewed the summary judgment evidence submitted by both parties in support of their respective positions, the Court finds that Respondents have not satisfied their evidentiary burden to demonstrate as a matter of law that Petitioner's statutory and procedural constitutional rights have not been violated; instead, there is ambiguity in the record as to the basis for Petitioner's continued detention and whether Petitioner received the required custodial reviews at 90 and 180 days after his initial detention and, if so, what those reviews entailed. Respondents are therefore not entitled to summary judgment on this habeas claim.

As previously stated, only specific categories of aliens who have been ordered removed may be detained beyond the initial 90-day removal period: (1) inadmissible aliens; (2) aliens removable under sections 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4); or (3) aliens who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). It is undisputed that there has not been a finding that Petitioner falls under the first category.

Petitioner contends that his detention does not fall under the second category because his removal was ordered under Section 1227(a)(1)(B) and not Section 1227(a)(1)(C) or any of the other specified statutes. These two statutes are closely related and both address deportability

based on the revocation of or failure to maintain the nonimmigrant status upon which the alien originally entered the United States. *Compare id.* at § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable.") *with id.* at § 1227(a)(1)(C) ("Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable."). Despite their similarity, the summary judgment record does not establish that Petitioner was ordered removable pursuant to Section 1227(a)(1)(C) or any other statute listed as a basis for detention beyond the 90-day removal period.

The summary judgment record reflects that the immigration judge's original November 5, 1999 voluntary departure order charges Petitioner with a violation of Section 237(a)(1)(B) of the INA (codified at 8 U.S.C. § 1227(a)(1)(B)) and stated: if Petitioner "fails to depart when and as required, the privilege of voluntary departure shall be withdrawn . . . without any further notice or proceedings, and the following order shall thereupon become immediately effective. Any non-complying respondent shall be removed from the United States to India on the charge contained in the Notice to Appear which relates to him or her." (Order [#1-1] at 65.) According to a declaration submitted by Respondents in support of their motion, the Notice to Appear also charged Petitioner as subject to removal pursuant to Section 237(a)(1)(B) of the INA for overstaying his visa. (Chen Decl. [#14-4] at ¶ 2.) There is no summary judgment evidence before the Court suggesting otherwise.

Petitioner contends that his detention does not fall under the third category for detention beyond the 90-day removal period because there has not been an affirmative finding by the Attorney General that he is a flight risk or a danger to the community.  Relatedly, Petitioner argues that he has not received his mandated 90-day or 180-day POCRs that could have made such a finding and that the failure to follow the custody review process set forth in the regulations violates his right to procedural due process.  The undersigned agrees with Petitioner that the summary judgment evidence does not conclusively establish the statutory basis for Petitioner's continued detention or that he was provided with the custody reviews mandated by INS regulations.

In addition to substantive protections, the Fifth Amendment's Due Process Clause also contains a procedural component, which "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' within the meaning of the . . . Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  In a procedural due process claim, it is not the deprivation of liberty that is unconstitutional; it is the deprivation of liberty without adequate procedural safeguards.  *See Daniels v. Williams*, 474 U.S. 327, 331 (1986).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

 To be sure, not every instance of regulatory non-compliance gives rise to a procedural due process violation and a valid claim for habeas relief.  But a federal agency's failure to follow its own procedural regulations can constitute a denial of due process where there is no evidence that the minimal constitutional requirements as to due process have otherwise been satisfied.  *See Gov't of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970) ("It is equally well established that it is a denial of due process for any government agency to fail to follow its own regulations

providing for procedural safeguards to persons involved in adjudicative processes before it."); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (holding that a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met). At least one district court in this Circuit has held that an alien's procedural due process rights were violated by a complete failure to provide the required 180-day review. *See Bonitto v. Bureau of Immigration and Customs Enforcement*, 547 F. Supp. 2d 747, 758 (S.D. Tex. 2008). Again, Respondents do not go so far as to argue that no matter the degree of the Government's non-compliance with the regulations, there can never be a due process violation sufficient to warrant habeas relief. And here, the summary judgment record does not conclusively establish that Petitioner was given the constitutional minima as to due process such that his claim for habeas relief is foreclosed as a matter of law.

The key aspects of the custody review process as set forth by the governing statutes and INS regulations are as follows: an alien is entitled to an initial review at the close of the 90-day removal period by the District Director, which requires written notice to the detainee, an opportunity to submit information in writing in support of release, and written notification of the decision to further detain or release. 8 C.F.R. §§ 241.4(h), (k)(1)(i). Three months after that (at 180 days), the alien is entitled to a second custody review by HQPDU. *Id.* at §§ 241.4(c)(2), (i)(1), (k)(1)(ii). In making all custody decisions, the decisionmaker is directed to consider factors such as "the alien's disciplinary record, criminal record, mental health reports, evidence of rehabilitation, history of flight, prior immigration history, and favorable factors such as family ties." *Zadvydas*, 533 U.S. at 684 (citing 8 C.F.R. § 241.4(f)). If the panel decides against release, it must review the matter again within a year, and can review it earlier if conditions change. *Id.* at §§ 241.4(k)(2)(iii), (v).

Petitioner argues he did not receive his 90-day or 180-day POCRs; Respondents maintain that he did. The summary judgment record, which contains two different conflicting declarations submitted by Respondents, does not establish Respondents' contention as a matter of law. There are only a few undisputed facts with respect to the custody review process during Petitioner's first six months or 180 days of detention. It is undisputed that Petitioner was arrested on August 10, 2018, at which time detention began. (Challes Decl. [#36-2] at ¶ 4.) It is also undisputed that sixty days later, on October 9, 2018, ICE Enforcement and Removal Operations ("ICE ERO") provided notice to Petitioner of an upcoming POCR that was to occur on November 8, 2018 (the 90-day POCR). (Curtright Aff. [#37-2] at 2; Challes Decl. [#36-2] at ¶ 8; Notice [#1-1] at 134–35.) Review materials were timely submitted by Petitioner's then counsel, Lance Curtright, on November 6, 2018 for the Government's consideration in making the November 8, 2018 POCR decision. (Curtright Aff. [#37-2] at 2; Request for Release on Supervision [#1-1] at 136–38.) The parties agree that no written decision regarding this 90-day POCR was ever sent to or received by Petitioner or his counsel. (Curtright Aff. [#37-2] at 2.) Whether that first POCR ever occurred is not established as a matter of law by the record.

The initial declaration submitted with Respondents' motion for summary judgment ("the Chen Declaration") stated that the 90-day POCR decision was made on the same date the notice was sent to Petitioner, which would have rendered the notice and request for the submission of any materials relevant to the review obsolete. (Chen Decl. [#14-4] at ¶ 27.) The supplemental declaration submitted with Respondents' post-hearing brief ("the Challes Declaration") admitted that Chen's statement is erroneous. (Challes Decl. [#36-2] at ¶ 8.) The Challes Declaration instead states that an ICE ERO San Antonio case officer conducted a file review on October 11, 2018 (two days after notice was sent to Petitioner of the review) and that this review evaluated

whether Petitioner was a flight risk or danger to the community. (Challes Decl. [#36-2] at ¶ 9.) If this is true, the review also would have taken place before Petitioner's attorney submitted his materials, and none of the arguable bases for Petitioner's release advanced by counsel would have been considered as required by the governing regulations. The Challes Declaration also states that DHS records show that a 90-day POCR was prepared in November 2018 by ERO and was "resubmitted" on December 27, 2018. (Challes Decl. [#36-2] at ¶ 10.) The original Chen Declaration stated that a second POCR was performed on December 31, 2018. (Chen Decl. [#14-4] at ¶ 28.) The Challes Declaration states that on December 31, 2018 it was determined that Petitioner is a flight risk and that he should remain in custody. (Challes Decl. [#36-2] at ¶ 10.) In short, the two declarations are not consistent. Importantly, the POCRs themselves are not in the summary judgment record. And the summary judgment record establishes that none of these decisions were ever sent to Petitioner.

Petitioner's former attorney, Lance Curtright, who represented Petitioner throughout his early detention through March 2019, attests that he never received any notice of any kind in this case regarding any custody review or determination, let alone notice of a November or December 2018 review that could have constituted the 90-day POCR. (Curtright Aff. [#37-2] at 3.) Due to this lack of notice, Mr. Curtright's office emailed a DHS Officer in January 2019 requesting information about Petitioner's custody status. (*Id.* at 2.) On January 22, 2019, he received an email response that no action would be taken to remove or release Petitioner until the BIA made its decision on the pending motion to reopen. (Curtright Aff. [#37-2] at 2.) In response to the question of whether a decision regarding custody would be served in writing, Petitioner's counsel was told that it would not be. (Curtright Aff. [#37-2] at 2.) At this point, both the 90-day and 180-day POCRs should have already occurred or been forthcoming. Yet, it

remains undisputed that no written decision explaining the bases for Petitioner's continued detention and establishing that the required reviews occurred was ever received by Petitioner or Mr. Curtright. (*Id.*) Again, the record does not contain copies of the 90-day or 180-day POCR decisions.

Respondents proffer the following explanation: They claim that the 90-day POCR decision was misplaced due to the government shutdown from December 22, 2018 to January 25, 2019. (Challes Decl. [#36-2] at ¶¶ 11–12.) Yet, according to the Challes Declaration, various review decisions were made during this time period. Even assuming this is a plausible explanation, the Chen and Challes Declarations contain multiple inconsistencies and contradictions that have not been reconciled by any additional evidence in the record. In fact, the *only* evidence submitted by Respondents to establish the occurrence of Petitioner's 90-day POCR are these inconsistent declarations. Respondents have essentially generated their own material issue of fact on this point. The Court is unable to resolve these inconsistencies based on anything else in the record. Respondents have not submitted to the Court any copy of the October, November, or December 2018 review decisions themselves or the DHS records upon which Chen or Challes relied in making their declarations. Yet the declarations of Chen and Challes refer to dates certain upon which review procedures occurred and were submitted to DHS, and still the Court does not have any evidence of these DHS records. At this stage of the proceedings, on an early motion for summary judgment in a case where no discovery has yet taken place, the Respondents' witnesses have not been cross examined or given the chance to explain and clarify mistakes and inconsistencies. Given the fact that critical documents may be lost, an evidentiary hearing is necessary to assess the credibility of these witnesses and to permit Petitioner to test their assertions.

Petitioner's current counsel assumed responsibility for his case on March 20, 2019, at which time he sent a letter to ICE complaining of the lack of compliance with the custodial review process and requesting review under both Sections 241.4 (governing 90-day and 180-day POCRs) and 241.13 (governing reviews based on foreseeability of removal) and advancing the reasons supporting Petitioner's release from detention. (Curtwright Aff. [#37-2] at 3; Mar. 20, 2019 Correspondence [#1-1] at 139–52.) In response to this request, ICE sent Petitioner the first written decision regarding his custody, which the Chen Declaration characterized as Petitioner's third POCR. (Mar. 20, 2019 Custody Decision [#1-1] at 153–54.) This decision, dated the same date as the letter from Petitioner's counsel, was sent over seven months after his initial detention. (*Id.*) This decision was issued by ICE ERO San Antonio and states that it was made based on a review of Petitioner's file, any interview of Petitioner, any information submitted to ICE officials, and the factors set forth in 8 C.F.R. § 241.4. (*Id.*) The decision also references the likely issuance of travel documents and removal in the reasonably foreseeable future as set forth in 8 C.F.R. § 241.13. (*Id.*) Puzzlingly, the Decision states that jurisdiction of the custody decisions in Petitioner's case would be transferred to HQPDU if Petitioner had "not been released or removed from the United States by February 6, 2019," a date that had already past at the time of the issuance of the decision by the ICE ERO officer. (*Id.*)

After this initial correspondence, it is undisputed that Petitioner received a number of other custody decisions issued by HQPDU. The record contains copies of April 3, 2019, May 29, 2019, and August 9, 2019 Decisions to Continue Detention, none of which reference 8 C.F.R. § 241.4 but instead focus on the § 241.13 inquiry of whether Petitioner had demonstrated "a good reason why [his] removal is unlikely." (Apr. 9, 2019 Custody Decision [#1-1] at 155–56; May 29, 2019 Custody Decision [#37-1] at 2; Aug. 9, 2019 Custody Decision [#37-1] at 3.) The

August 9, 2019 Decision also expressly states that Petitioner is to remain in ICE custody pending a ruling from the Fifth Circuit on his appeal. (Aug. 9, 2019 Custody Decision [#37-1] at 3.)

In summary, the record does not establish as a matter of law that Petitioner received his 90-day or 180-day POCRs under 8 C.F.R. § 241.4, which were targeted to occur by November 8, 2018 and February 6, 2019, respectively, and were to focus on such factors as risk of flight, criminal history, and danger to the community. *See* 8 C.F.R. § 241.4(f). Nor is their evidence that the tardy process Petitioner did receive provided the review and process required under 8 C.F.R. § 241.4. Instead, Petitioner received a written custody decision on March 20, 2019, more than seven months after his initial detention and well past the 90-day and 180-day benchmarks, from an ICE ERO Field Officer who by his own statement no longer had jurisdiction over Petitioner's custody decision. Petitioner thereafter received three subsequent decisions on the likelihood of his removal under § 241.13. On this record, the Court is not convinced that Petitioner ever received an adequate evaluation from an office with jurisdiction over his custody decision as to whether his continued detention—irrespective of the likelihood of his removal in the reasonably foreseeable future—was justified under § 241.4. None of the decisions issued by the Government to date has explained why the Government believes Petitioner's continued detention is warranted other than a cursory citation to 8 C.F.R. § 241.4. In sum, Respondents' argument is that they complied with the regulations regarding continued detention. But the record and briefing they submitted does not establish that they did as a matter of law, and an evidentiary hearing is necessary to resolve Petitioner's procedural due process claim. Respondents must demonstrate to the Court that whatever process Petitioner did receive, even if deficient in some ways, meets the due process threshold and precludes habeas relief.

**D.     Neither does the record establish as a matter of law that Respondents cured any procedural defects.**

Respondents also argue they are entitled to summary judgment because to the extent that they failed to comply with the regulations, they cured the procedural defects with substitute process.  But the record before the Court does not establish that the March 20, 2019 review decision cured any failure of ICE to provide Petitioner with notice, review, and a written decision regarding his continued custody at 90 and 180 days after his initial detention.  In this case, the Court is not faced with simply a delay in the provision of a procedural safeguard set forth in the governing INS regulations.  *Cf. Mohammad v. Lynch*, No. EP-16-CV-28-PRM, 2016 WL 8674354, at *6 n.6 (W.D. Tex. May 24, 2016) (finding no merit to petitioner's procedural due process claim where the evidence demonstrated that the review had already occurred, thereby redressing any delay in the provision of the 90-day and 180-day POCRs).  Instead, the Court is faced here with a genuine question as to whether the bulk of the procedures designed to protect a detainee's due process rights were followed at all.

At the Court's hearing on Respondents' motion, Respondents argued that if the Court were to find that the March 20, 2019 custody decision did not adequately cure any deficiencies in the process afforded Petitioner and Petitioner were to ultimately prevail on his habeas petition, the remedy is not immediate release from custody but rather the opportunity for the Government to provide substitute process.  The Court agrees that the remedy for a procedural due process violation is substitute process.  *See id.* (concluding that the failure to provide timely 90-day and 180-day custody reviews was likely a procedural due process violation, the appropriate remedy was "to order the Government to conduct the required detention review").  *See also Bonitto*, 547 F. Supp. 2d at 758 (ordering substitute process within 60 days to remedy procedural due process violation before considering alien's release).

Substitute process—as oppose to release—as a remedy for a procedural due process violation also comports with the reasoning of the Supreme Court in the analogous context of the Bail Reform Act, which supplies the procedures for determining whether to detain a suspect in pretrial custody on federal criminal charges. The Supreme Court has made clear that the mere failure to comply with the time limitations set forth in the Act does not mandate release of a person who should otherwise be detained. *United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990).

Respondents represented at the Court's hearing that they would be willing to provide substitute process for Petitioner clearly evaluating the reasons for his continued detention under the factors set forth in 8 C.F.R § 241.4 and to issue it *nunc pro tunc* so that the office with current jurisdiction over Petitioner—HQPOR—could issue the custody decision. But nothing in the record indicates that Respondents have attempted any substitute process since the time of the hearing.

On this record, the Court will deny Respondents' motion for summary judgment as to Petitioner's procedural due process claim and challenge to his statutory basis for continued detention. Petitioner contends his statutory and constitutional rights were violated and therefore he is entitled to habeas relief. Respondents move for summary judgment on the grounds they complied with all regulatory and statutory requirements and therefore Petitioner's due process rights could not have been violated. The record does not establish Respondents' compliance as a matter of law and fact disputes remain. Thus, the Court will set an evidentiary hearing to take place in sixty days. At that hearing, the Court will resolve any evidentiary disputes regarding the process Petitioner has received, including but not limited to any substitute process Petitioner receives between the date of this Order and the hearing, and whether that process satisfies the

requirements of the regulations and cures any violations of Petitioner's procedural due process rights.

## V.  Conclusion

Respondents have established that they are entitled to summary judgment as to Petitioner's habeas claims that his detention violates the mandates of *Zadvydas* and his right to substantive due process.  Respondents have not, however, satisfied their summary judgment burden to demonstrate that there is no dispute that Petitioner received reviews that comply with the requirements of 8 C.F.R. § 241.4 and that therefore Petitioner is unable as a matter of law to prevail on his claim that his continued detention has no statutory basis and violates his right to procedural due process.  Accordingly, the Court will grant in part and deny in part Respondents' motion for summary judgment.  Consistent with this opinion, the Court will set the case for an evidentiary hearing in sixty days to ascertain whether the process provided by the Government, including any substitute process provided between now and the date of the hearing, complies with INS regulations and cures any violation of Petitioner's due process rights.  The Court will consider whether Respondents have provided Petitioner with notice and an opportunity to submit materials in support of his release, review under § 241.4 with specific consideration of Petitioner's risk of flight and danger to the community, and a written decision explaining the basis of its findings.

Thus, in accordance with the foregoing,

**IT IS ORDERED** that Respondents' Motion for Summary Judgment [#14]   is **GRANTED IN PART and DENIED in PART**; and

**IT IS FURTHER ORDERED** that the case will be set for an evidentiary hearing in approximately 60 days by separate order.

**IT IS SO ORDERED.**

SIGNED this 23rd day of March, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE